IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANA G. MARTINEZ,

   Plaintiff

   v.                                           Civil No. 06-1862 (SEC)

COMMONWEALTH OF PUERTO RICO

   Defendant

**OPINION AND ORDER**

     Pending before this Court is Defendant Commonwealth of Puerto Rico's ("Defendant") Motion for Summary Judgment (Docket # 89), and Plaintiff Ana G. Martinez's ("Plaintiff") opposition thereto (Docket # 93). After considering the filings, and the applicable law, Defendant's motion is hereby **DENIED.**

     **Factual and Procedural Background**

     On September 1, 2006, Plaintiff filed the above captioned complaint against the Commonwealth. She then filed an Amended Complaint (Docket # 10), and various motions to dismiss (Docket # 8 (declared moot), Docket # 17 (denied) and Docket # 48 (declared moot)). On April 8, 2008, this Court granted Plaintiff the opportunity to file a Second Amended Complaint (Docket # 53), to which the Commonwealth filed an answer on April 30, 2008, and a Motion for Judgment on the Pleadings. See Docket # 60.

     According to Plaintiff, the pattern of harassment that occurred at the Rio Piedras fire station, and led to her prior civil action,[1] did not cease with the settlement agreement. During

---

[1] The present suit is, in may ways, related to Plaintiff's prior action, Ana G. Martinez v. Commonwealth of Puerto Rico, civil no. 00-1468 (D.P.R. filed April 13, 2000), which was settled on July 8, 2002.

**CIVIL NO. 06-1862 (SEC)**                                                                                               **Page 2**

the course of said action, Defendant transferred Plaintiff to the Trujillo Alto fire station.  See Docket 53-2 at ¶ 5.20.  However, Plaintiff alleges that events that transpired after the settlement in the Trujillo Alto station, constitute new and discrete acts of retaliation and sexual harassment, which are proscribed under Title VII of the Civil Rights Act.

More specifically, Plaintiff alleges that upon her return to the Puerto Rico Fire Department ("PRFD"), her working conditions deteriorated even further.  To wit, she was subjected to retaliation, and continued acts of sexual harassment.  She further contends that due to the foregoing, she felt unable to continue as an employee of the PRFD, and therefore resigned.  See Docket # 53-2; Docket # 61 at 3.  In turn, Defendant contends that the present action should be dismissed on the basis of "*res judicata*/collateral estoppel or issue preclusion. . ." See Docket # 60 at 2.  This argument is predicated on the existence of the earlier settlement agreement between Plaintiff and the Commonwealth, which Defendant asserts bars all new actions.  Id. at 8.  Furthermore, Defendant alleges that the events described in the Second Amended Complaint, even those that occurred after the prior settlement, are not actionable under Title VII.  Id. at 9.  Accordingly, Defendant filed the present motion requesting summary judgment, and Plaintiff opposed.  This Court will address each party's arguments below.

**Standard of Review**

*R. FED. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs.,

**Civil No. 06-1862 (SEC)**                                                                                                    **Page 3**

Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). Summary judgment is only in the absence of a genuine issue as to the material facts of the case. Santoni v. Potter, 369 F.3d 594, 598 (1st Cir.2004).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 1990).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States,

**Civil No. 06-1862 (SEC)**                                                                                           Page 4

924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989), holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve."). The opposing party may not rest on mere allegations, or denials of the pleadings.

In cases of sexual harassment, "summary judgment is an appropriate vehicle for polic[ing] the baseline for hostile environment claims," Mendoza v. Borden, Inc. 195 F. 3d 1238, 1244 (11th Cir. 1999) (quoted in Pomales v. Celulares Telefónica, Inc., 447 F. 3d 79 (1st Cir. 2006).

**Applicable Law and Analysis**

Because the instant motion is for summary judgment, Defendant must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation[...]

Local Rule 56(c).

Local Rule 56 (e) further provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Moreover, a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered

**Civil No. 06-1862 (SEC)**                                                                                                    **Page 5**

on summary judgment." Local Rule 56(e). These rules "are meant to ease the district court's onerous task and to prevent parties from unfairly shifting the burdens of litigation to the court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007). The First Circuit has held that when the parties ignore the Local Rule, they do so at their own peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

After reviewing the Defendant's Statement of Uncontested Facts ("SUF") (Docket # 90), and Plaintiff's Response to Defendant's Statement of Uncontested Material Facts ("RSUF") (Docket # 93-2), this Court notes that both parties have substantially complied with Rule 56.

*Uncontested Facts*

Pursuant to Defendant's SUF ( Docket # 90), and Plaintiff's RSUF (Docket # 93-2), the following facts are uncontested.[2]

The PRFD has regulations and general orders regarding policy towards the prevention of sexual harassment in the workplace, and to establish a procedure to channel claims of sexual harassment. SUF ¶ 16.[3] Plaintiff entered into a settlement agreement in her first case (00-1468 (CCC)). SUF ¶ 28. As part of the settlement of that case, Plaintiff was transferred to the Trujillo Alto Station. SUF ¶ 36. Although the first case was settled, the harassment in Trujillo Alto never stopped. SUF ¶ 29. Part of the issues negotiated with PRFD entailed that the harassment towards her would stop, but according to Martinez, it never did. SUF ¶ 30-32. Plaintiff kept a book of notes of all the incidents that were occurring in the Trujillo Alto Station. In it, events from July 15, 2003 to August 2, 2004 were recorded. SUF ¶¶ 105-112. In her logbook, Plaintiff recorded three instances where she found pornographic drawings in her work area. Id. The first one makes reference to a drawing left at her desk on May 6, 2003.

---

[2] Facts ¶¶ 8, 11, 12, 15, 18, 20, 21, 55, 60, 64, 69, 87, 103, 107, 108, and 111 were properly objected or denied by Plaintiff. All of the remaining facts were admitted by Plaintiff.

[3] To the extent such document exists.

**Civil No. 06-1862 (SEC)**                                                                                              **Page 6**

Id. Then on May 5, 2004 Plaintiff again wrote that she found a napkin with an anatomically correct drawing of a male doll. On June 14, 2004, Martinez recorded that she found another paper with a pornographic drawing. SUF ¶ 112. An investigation was made of the drawing allegedly received by Plaintiff in May 2003, and it was determined, nearly a year later, that the person responsible could not be identified. SUF ¶ 113.

In addition to the drawings, Plaintiff recorded two incidents regarding problems with the door to the ladies' restroom. SUF ¶ 114. The first one occurred on January 20, 2004, where she claimed that the door had become lodged, and two firemen were required to open the door. Id. Subsequently, on March 8, 2004, at 7:10 a.m., an unidentified person damaged the lock of the door. Id. That day, the door of the ladies' restroom could not be opened. Id.

Plaintiff also recorded two instances where the ladies' restroom reeked of urine, because the floor had been peed on. SUF ¶ 115. The first instance was recorded on May 10, 2004. Id. The second one was recorded on July 16, 2004. Id.[4]

Furthermore, three incidents with anonymous obscene phone calls at the fire station in Trujillo Alto were recorded in Plaintiff's logbook. SUF ¶ 116. The first was on November 3, 2003 at 11:15 a.m., when an unidentified voice called her "crazy." Id. On that same day, at 1:10 p.m., Plaintiff recorded another call where the unknown caller said, "put out my fire, crazy cry-baby." Id. The second occasion recorded occurred on November 6, 2003 at 2:55 p.m., when an unidentified man called the Station, and made three sexually explicit comments to her. Id. The third and last occasion recorded by Plaintiff was on November 7, 2003 at 11:19 a.m., when another unidentified man uttered another sexually explicit insult to her. Id. Plaintiff admitted that these calls were anonymous, and that she never identified who was calling. SUF ¶ 117.

---

[4] These are of significance because Plaintiff alleges that she was the only woman working at the station most days, and that the male employees intentionally defaced the bathroom to make her feel unwelcome.

**Civil No. 06-1862 (SEC)**                                                                                                         **Page 7**

After several administrative proceedings with the Commonwealth, the Court's judgment in case 00-1468 (CCC), and the filing of a new complaint, Ana G. Martinez v. Commonwealth of Puerto Rico, civil no. 06-1862 (SEC) (see SUF ¶ 41, 43, 45, 56, 58, 59, 61-63, 65-68, 70-86, and 88-102), Martinez requested a transfer to the Fajardo fire station on August 4, 2004. SUF ¶ 23. On September 7, 2004, she was transferred to the Luquillo fire station. SUF ¶ 24. After her arrival at the Luquillo station, a hostility-free environment prevailed, for a time. SUF ¶ 25. Plaintiff went to the Luquillo station after meeting with Captain Cruz, who recommended Luquillo instead of the Fajardo station because it was a calmer. SUF ¶ 27.

However, the respectful atmosphere allegedly did not prevail, and Plaintiff reported an unwanted sexual advance from co-worker Mario Millan on March 29, 2006. SUF ¶ 1. This unwanted sexual advance allegedly took place on March 28, 2006 at the Luquillo fire station. SUF ¶ 2. After Plaintiff complained, an administrative investigation was recommended by Commander Gilberto Cruz Perez, Chief of the Carolina Area. SUF ¶ 3. The agency concluded the investigation, and by April 7, 2006, firefighter Mario Millan was removed from the Luquillo fire station, and sent to the Rio Grande fire station. SUF ¶¶ 4, 5.[5] After Plaintiff complained about the alleged sexual harassment committed against her by Millan, the agency summoned Teddy Torres, Miguel Sanchez, Sergeant Montoyo, Millan, and Plaintiff for the investigation. SUF ¶ 6.[6] On September 28, 2006, Sergeant Edwin Rosario rendered a report of his investigation regarding the alleged sexual harassment described by Plaintiff. SUF ¶ 7.[7] Notwithstanding the conclusion of said report, which stated that there was not enough evidence

---

[5] Plaintiff admits SUF ¶ 5, only to the extent that a procedure was initiated, as she contends that it was biased and vitiated. See Docket # 93-2, § II, ¶ 81.

[6] Only to the extent that a procedure was initiated, and the named individuals were called; however, she holds that the process was biased, and vitiated, and people who had no knowledge of the events were asked to testify, namely Jorge Hernandez, whom Plaintiff had filed harassment complaints. Id.

[7] With the qualification that the report was biased and vitiated.

**Civil No. 06-1862 (SEC)**                                                                                             **Page 8**

to sustain the charges against firefighter Mario Millan, German Ocasio, Chief of PRFD, sent a letter to Millan suspending him from his employment and salary for a term of sixty (60) days. SUF ¶ 9. Thereafter, in light of the report issued by the hearing officer, Chief German Ocasio issued a decision revoking the intended sanction. SUF ¶ 13. Plaintiff was allowed to testify in the administrative hearing. SUF ¶ 14.[8]

On April 13, 2007, German Ocasio ordered an administrative investigation against Plaintiff for insubordination, violation of the norms pertaining to the use of bedrooms, falsely imputing improper behavior on a fellow firefighter, and for repeatedly lying in her testimony and written documents. SUF ¶ 17.

*Sexual Harassment and Hostile Work Environment under Title VII*

Title VII of the Civil Rights Act, "makes it an unlawful employment practice to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." See 42 U.S.C. § 2000e-2(a)(1); see also Harris v. Forklift, 510 U.S. 17, 20 (1993). The Supreme Court has interpreted the phrase terms, conditions or privileges of employment broadly, and has stated that it encompasses Congress' intent to "strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatory hostile or abusive environment." Harris, 510 U.S. at 20; see also Burlington Industries v. Ellerth, 524 U.S. 742, 753-754 (1998) (holding that a hostile work environment is a form of discrimination that is actionable under the statute). That is, Title VII is violated whenever "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris, 510 U.S. at 20.

---

[8] With the qualification that Ms. Martinez's lawyers were not allowed to intervene in any way or object. Furthermore, Mr. Lamberty (the hearing officer) confused her with his questions and attempted to embarrass her. See Docket # 93-5, p. 141, lines 22-25; p. 142, lines 1-14.

**Civil No. 06-1862 (SEC)**                                                                                          **Page 9**

In order to succeed in a hostile work environment claim, plaintiff must show that: (1) she is a member of a protected class (in this case, her gender); (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive; and (6) some basis of employer liability. Rosario v. Department of the ARMY, 573 F. Supp. 2d 524, 529 (citing Pomales, 447 F. 3d at 83. The focus of hostile work environment cases is generally on elements (4) and (5). See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (citing Faragher.v. City of Boca Raton, 524 U.S. 775 (1998); Harris v. Forklift Systems, Inc., 510 U.S. at 20-23).

There is no controversy as to the fact that Plaintiff is a member of a protected class. However, there is still contention regarding whether Martinez was subjected to unwelcome sexual harassment, and if the harassment was based on sex. Defendant argues that the conduct complained was not sufficiently severe or pervasive so as to alter the conditions of Plaintiffs employment, and that it was not objectively abusive.

Although there is no mathematically precise test, in order to determine whether an environment is hostile or abusive, the Court must look at all the circumstances, which may include: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it is physically threatening or humiliating, (4) whether it was just a mere utterance, and (5) whether it unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 23; see also Pomales, 447 F.3d at 83; Marrero v. Goya of Puerto Rico, 304 F. 3d 7, 18-19 (1st Cir. 2002); Lee-Crespo v. Schering-Plough del Caribe, Inc., 354 F. 3d 34, 46 (1st Cir. 2003).

The "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." Harris, 510 U.S. at 20. The conduct must be sufficiently severe or pervasive for a reasonable person to find

**Civil No. 06-1862 (SEC)**                                                                                                                  Page 10

that the work environment was hostile or abusive. Id. Title VII also requires that the employee subjectively perceive the work environment as abusive. Id. Despite Title VII's protection against discrimination based on sex, the Supreme Court has clearly stated that "the prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the conditions of the victim's employment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998). That is, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment- an environment that a reasonable person would find hostile or abusive- is beyond Title VII's purview." Id.

As previously stated, Plaintiff's sexual harassment claim stands on a series of incidents or comments involving Millan, and other unidentified persons after the prior case, 00-1668 (CCC), was settled on June 24, 2002. See Docket # 93 and Docket # 93-2. Plaintiff's allegations, if true, depict a highly uncomfortable work situation, which could reasonably be construed as severely abusive. See Docket # 69. As such, those claims based on Plaintiff's allegations of a hostile work environment continuing after the 2002 settlement cannot be dismissed at this juncture.

The Commonwealth also contends that Plaintiff failed to satisfy the employer liability prong of the hostile environment test. In this regard, when the harassment is caused by a co-employee, the employer is liable if it knew, or should have known, of the charged sexual harassment, and failed to implement prompt and appropriate corrective action. See White v. New Hampshire Dep't of Corrections, 221 F.3d 254 (1st Cir. 2000). Furthermore, when an employer fails to take a remedial measure to stop the offensive conduct, he has "effectively ratified the harassment" when he knew of the discrimination but took no action against the offending party. Dixon v. International Brotherhood of Police Officers, 504 F.3d 73 (1st Cir. 2007) (quoting Woods v. Graphic Commc'ns, 925 F.2d 1195, 1202 (9th Cir. 1991)).

**Civil No. 06-1862 (SEC)**                                                                                              **Page 11**

In the alleged case of harassment between Martinez and Millan, controversy exists as to whether the harassment claimed by Plaintiff took place at all, and whether the administrative procedures that ensued against her after she denounced said incident affected the conditions of her employment, prompting her to resign. See Docket # 53-2; Docket # 61 at 3; RSUF § II, ¶ 85. The Court notes that, at this juncture, the record must be examined in the "light most favorable to the nonmovant," and indulging all "reasonable inferences" in the non-moving party's favor. Maldonado-Denis, 23 F.3d at 581.

Based on the foregoing, Defendant's request for summary judgment on Plaintiff's sexual harassment and hostile work environment claim is **DENIED**. However, this does not dispose of the instant motion. The Commonwealth also moves the Court to grant summary judgment on Plaintiff's retaliation claim, and *res judicata* and collateral estoppel grounds.

*Retaliation*

The Commonwealth argues that Plaintiff has not pled sufficient facts to establish a retaliation claim under Title VII. A *prima facie* case of retaliation under Title VII requires for a plaintiff to show that: "(1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." Dixon v. Int'l Bhd. Of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007). With regards to Plaintiff's allegations of retaliation, her claim is predicated on having denounced allegedly discriminatory situations, like the pornographic drawings she found in her desk (SUF ¶ 112, 113), the damage inflicted to the ladies' restroom door and facilities (when, at all times, she was the only woman working at the Station) (SUF ¶ 114, 115), and the obscene telephone calls she received (SUF ¶ 116, 117). All of these instances were allegedly ignored by her superiors, who also allegedly used Martinez as a scape goat (Docket # 53-2, ¶ 5.26), allegedly threatened that they would not promote her (Docket # 53-2, ¶ 5.27), made allegedly unfounded charges that she took unauthorized leaves of absence (Docket # 53-2, ¶ 5.49-50), and began an allegedly malicious

**Civil No. 06-1862 (SEC)**                                                                                                          **Page 12**

internal investigation against her for reporting an alleged act of sexually improper conduct by another employee (Docket # 53-2, ¶ 5.54). Moreover, in Plaintiff's RSUF, there are sixteen (16) objections, and denials on facts that are central to the alleged instances of retaliation.[9]

This Court is satisfied that these facts demonstrate a *prima facie* pattern of retaliation, as they suggest that Plaintiff was singled out due to her complaints against male fire fighters. As such, Defendant's Motion for Summary Judgment in relation to Plaintiff's retaliation claims is **DENIED**.

*Res judicata and collateral estoppel*

The Commonwealth wishes "to prevent the waste of judicial and party resources through vexatious and multiple lawsuits, and encourage the rendering of consistent, reliable adjudications," Esteves v. Ortiz-Alvarez, 678 F. Supp., 963, 965 (D.P.R. 1988), claiming that the Court should not entertain the case at hand. Defendant relies on University of Tennessee v. Elliott, 478 U.S. 788 (1986), for the proposition that the purported investigation, and findings of fact by the PRFD related to the Millan incident are *res judicata*. In Elliott, as the Defendant correctly noted, the Supreme Court ruled that an Agency's final decision adjudicating § 1983 claims are final. However, the instant case is not a § 1983 claim, it is a Title VII case, under 42 U.S.C. § 2000 (e), *et seq*. Congress's intent was for a claimant to have a trial *de novo* notwithstanding the administrative determinations. The Elliott Court held that:

> The legislative history of the 1972 amendments reinforces the plain meaning of the statute, and confirms that Congress intended to accord federal employees the same right to a trial *de novo* [following administrative proceedings' as is enjoyed by private-sector employees, and employees of state governments and political subdivsions under the amended Civil Rights Act of 1964.

Elliott, 478 U.S. at 795-796. See also Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974) (holding that "[...] final responsibility for enforcement of Title VII is vested with

---

[9] See, supra n. 1.

**Civil No. 06-1862 (SEC)**                                                                                           Page 13

federal courts."); Raniola v. Bratton, 243 F.3d 610, 623-624 (2nd Cir. 2001) (stating "The Supreme Court has held that Congress, in enacting Title VII, generally intended to eliminate the binding effect of prior administrative findings and provide a de novo trial on Title VII claims.").

Defendant also moves this Court to consider that pursuant to Puerto Rico case law, Plaintiff must be directed to request the execution of the settlement agreement signed in 2002 instead of continuing with the case at hand. In support, the Commonwealth cites a Puerto Rico Supreme Court case, Neca Mortgage Corp. V. A&W Developers, S.E., 137 P.R. Dec. 860 (1995), which resolved that in the case there is a court settlement, the plaintiff must ask for the execution of the settlement agreement as a final judgment.

This Court declines Defendant's invitation to dismiss this case on *res judicata* and collateral estoppel claims. As exposed by the facts in contention in Plaintiff's RSUF, and the many instances she denounced retaliatory acts (See Docket # 53-2, ¶¶ 5.26, 5.27, 5.49, and 5.54; SUF ¶ 112-117), there is a genuine controversy regarding whether the Commonwealth failed, during five (5) years, to provide a hostility-free working environment for Plaintiff, in spite of her administrative maneuvers within the PRFD to seek adequate relief. Furthermore, this Court has clearly established that all incidents prior to July 8, 2002 are barred from further judicial relief. See Docket # 69 at p. 6.

Therefore, this Court **DENIES** the Commonwealth's Motion for Summary Judgment, in as much as the RSUF contains contested allegations sufficient to sustain Title VII claims for retaliation claims new and independent from those covered in the 2002 settlement.

**Civil No. 06-1862 (SEC)** **Page 14**

**Conclusion**

Based on the foregoing, Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of August, 2009.

                S/ *Salvador E. Casellas*
                SALVADOR E. CASELLAS
                U.S. Senior District Judge